IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN CAMPBELL
23 Aven Way
Nottingham, MD 21236

Plaintiff

Case No.

v.

CENTER FOR SOCIAL CHANGE, INC.
6000 Amberton Drive
Elkridge, MD 21075
Serve on:
Chandhok Singh, Registered Agent for Service of Process
8410 Terry Way
Severn, MD 21144

Defendant

COMPLAINT

Plaintiff Brian Campbell ("Mr. Campbell"), by undersigned counsel, complains of Defendant Center for Social Change, Inc. ("the Center"), and seeks relief as follows:

The Parties

1. Mr. Campbell is a citizen and resident of the State of Maryland. Until February 3, 2014 he was an employee of the Center.

2. The Center is a business incorporated under the laws of the State of Maryland, with its principal place of business in Maryland. As such, it is an entity with the capacity to sue and be sued. It works on contact with State agencies to provide

individualized plans for citizens with intellectual disabilities. It employed Mr. Campbell as a program specialist up to the time of his termination.

Jurisdiction and Venue

3. The Center is incorporated under the laws of the State of Maryland and has its principal place of business in this District, and hence is subject to personal jurisdiction in this Court.

4. This action arises in part under the anti-retaliation provisions of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("the FLSA") and hence raises a federal question within the meaning of 28 U.S.C. § 1331, and lies within the subject-matter jurisdiction of this Court. Other issues raised in this matter come under this court's ancillary jurisdiction.

5. The Center resides in this District within the meaning of 18 U.S.C. § 1391(b)(1) and (c)(2). And a substantial part of the events or omissions giving rise to the claim occurred in this District. Hence venue is appropriate within this District.

Facts Common to All Counts

6. On or about December 6, 2013, Mr. Campbell was successfully employed by the Center as a salaried, exempt employee within the meaning of the FLSA. He had recently received a raise (in August of 2013), and a good evaluation. He had received two $50 bonuses in October 2013, a paid cruise for seven days in November 2013, and one $500 bonus in December 2013. On or about December 6, 2013, he received a jury

summons from the Circuit Court for Baltimore County. The summons obligated Mr. Campbell to present himself at the Circuit Court on January 7, 2014, and to serve until released.

7. Mr. Campbell advised Ms. Dana Dimas, his supervisor, before and on December 31, 2013, that he would be absent on January 7, 2014, and she expressed no concern, based on the assumption that Mr. Campbell would be back the day after his first appearance at the Circuit Court. Mr. Campbell advised Ms. Dimas, prior to his departure, that individual plan meeting minutes regarding a client identified as AF would be left incomplete, and Ms. Dimas responded it was "okay," and that he could complete it on the following Wednesday, when she assumed he would be back.

8. After reporting for jury duty on January 7, Mr. Campbell found that he was picked for a petit jury empaneled for a lengthy trial. Mr. Campbell promptly notified his employer that he would be required to continue to report for jury duty throughout the trial. Ms. Dimas then advised him that she would see to it that another employee completed the individualized plan meeting minutes for AF in Mr. Campbell's absence.

9. In fact, the trial lasted through January 31. On the 18th calendar day of the trial, Mr. Campbell discovered that he was not being paid for his time at trial. He complained of this to Ms. Natalya Todorova, the Center's Director of Finance and Human Resources, who advised him that he was being treated as on unpaid leave, but would be allowed to resume his job once he was finished with jury service. He consulted counsel,

who on January 31, 2014 sent a letter advising Ms. Todorova that the practice of not paying Mr. Campbell, a salaried employee, for his time in jury service violated the FLSA, and specifically 29 C.F.R. § 541.602, a regulation issued by the Labor Department under authority of the FLSA.

10. On the day of his return, Mr. Campbell was called into a conference with Ms. Dimas and Ms. Todorova. He was handed a check for the amount he was owed under the FLSA protections for salary during jury duty that had previously been unpaid. He was then told that he was being terminated. Mr. Campbell was faulted for not having completed the meeting minutes regarding client AF, which Ms. Dimas had previously advised him would be completed by another employee, nor having completed individualized plan preparations since September 2013. The reasons given for his termination were patently false, and Mr. Campbell could have demonstrated much of the falsity of these reasons, but Ms. Dimas and Ms. Todorova would not allow Mr. Campbell to return to his desk to retrieve substantiating documentation. Instead, Mr. Campbell was told to leave the premises immediately after this meeting.

11. While Mr. Campbell had been out on jury duty, the Center also applied one of his Earned Time Off days to his absence, without his request or permission; upon his termination, this day of Earned Time Off was not reapplied to the compensation due him.

12. Subsequent to his termination, Ms. Dimas and the Chief Operating Officer, Chandhook "Jesse" Singh, called two former colleagues of Mr. Campbell into a meeting, and made disparaging and untrue statements concerning Mr. Campbell's performance.

Count One
Retaliation: Fair Labor Standards Act

13. All previous allegations of this Complaint are incorporated in this Count by reference as if realleged.

14. 29 U.S.C. § 215(a)(3) provides in relevant part: "...[I]t shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to [the Fair Labor Standards Act]..." This language has specifically been held to forbid discharging an employee because he has complained to company management about a practice violating the Act. *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428 (4th Cir. 2012).

15. As previously recounted, Mr. Campbell, through counsel, complained to company management about the Center's failure to pay him for his time on jury duty. While the Center did rectify that failure, it also immediately terminated him for stated reasons which were demonstrably false. It is clear that the actual reason for the termination was a determination to retaliate against Mr. Campbell for his having insisted on being paid salary while on jury duty, as required by the FLSA.

WHEREFORE, Mr. Campbell demands:

a. An order reinstating him, as provided in 29 U.S.C. § 216(b), and providing that the Center is enjoined from further acts of retaliation against him, including for his bringing of this action;

b. Backpay and frontpay in amounts to be determined at trial;

c. An amount equal to backpay and frontpay in liquidated damages;

d. Reasonable attorney's fees in amounts to be determined in post-trial proceedings;

e. Prejudgment and postjudgment interest, as appropriate;

f. The costs of this action; and

g. Such other and further relief as justice may require.

Count Two
Wrongful Discharge

16. All previous allegations of this Complaint are incorporated in this Count by reference as if realleged.

17. Immediately upon his return to employment on or about February 3, 2014, Mr. Campbell was discharged for stated reasons which were demonstrably false. The real reason for his discharge was employer animus owing to Mr. Campbell having obeyed a jury summons and done his civic duty. This civic duty is codified at Md. Ann. Code, Courts & Judicial Proceedings § 8-504, which makes it a criminal offense for a juror to disobey a jury summons.

18. A correlative duty is that of an employer not to discharge an employee for having obeyed a jury summons. This duty is codified at Md. Ann. Code, Courts & Judicial Proceedings § 8-501, which makes it a criminal offense for an employer to discharge an employee for such a reason. While Mr. Campbell's compliance with his civic duty did impose financial burdens upon his employer, public policy requires that the employer shoulder those burdens.

19. Md. Ann. Code, Courts & Judicial Proceedings §§ 8-501 and 8-504 between them establish a Maryland public policy that employees must obey jury summonses and employers cannot terminate employees who obey those summonses. While this public policy is enforced by fines against noncompliant employers, such fines are paid to the sovereign, not to the employee. There is no specific remedy provided in law for the employee himself or herself whose employment is terminated by a noncompliant employer. For such employees, the common law of Maryland provides for the implied remedy of the tort of wrongful discharge.

20. Mr. Campbell's discharge by the Center therefore was a wrongful discharge.

21. The discharge was accomplished with actual malice, characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will and fraud.

22. Because of this discharge, Mr. Campbell has suffered loss of income and other financial consequences, including the costs of finding new employment, as well as emotional distress owing to the loss of a job in which he experienced emotional satisfaction and owing to the loss of status and the stigma which attaches to having been discharged involuntarily and purportedly for cause.

WHEREFORE, Mr. Campbell demands:

a. Compensatory damages in the amount of $200,000;

b. Punitive damages in the amount of $200,000;

c. Prejudgment and postjudgment interest, as may be appropriate;

d. The costs of this action; and

e. Such other and further relief as justice may require.

Count Three
Maryland Wage Payment and Collection Law

23. All previous allegations of this Complaint are incorporated in this Count by reference as if realleged.

24. Mr. Campbell, as an employee in the State of Maryland, was protected by the Maryland Wage Payment and Collection Law, Md. Ann. Code, Labor & Employment §§ 3-501 *et seq.* It is therein provided that each employer shall set regular pay periods (§ 3-502), that all "fringe benefits" constitute "wages" (§ 3-501(c)(2)(ii)), that an employer may not make deductions from an employee's pay that are not expressly authorized by the employee in writing (with certain exceptions not relevant here)

(§ 3-503(2)), and that an employer must promptly pay, upon cessation of employment, all wages owed the employee for work performed before the termination of employment (§ 3-505).

25. Mr. Campbell was regularly paid biweekly. Mr. Campbell received, as part of his regular compensation, Earned Time Off, a fringe benefit that constituted wages within the meaning of the Wage Payment and Collection Law. Mr. Campbell had a day's worth of Earned Time Off, a form of wages, deducted from his compensation while he was out on jury duty. Mr. Campbell had never authorized such a deduction in writing. Mr. Campbell's Earned Time Off was not promptly restored to him upon the termination of his employment, as required by law.

26. The subtraction of Mr. Campbell's Earned Time Off from the pay due him was not the result of any error or bona fide dispute, even if there had been an error or bona fide dispute in the initial failure to pay him his regular wages. He had never authorized the deduction, and there is no other conceivable basis upon which management could have justified such a deduction.

WHEREFORE, Mr. Campbell demands:

a. Payment of the value of the deducted Earned Time Off with interest;

b. Treble damages, as provided in Md. Ann. Code, Labor & Employment § 3-507.1(b);

c. Reasonable counsel fees, as provided in Md. Ann. Code, Labor & Employment § 3-507.1(b);

d. The costs of this action; and

e. Such other and further relief as justice may require.

Count Four
Defamation (Damages and Injunctive Relief)

27. All previous allegations of this Complaint are incorporated in this Count by reference as if realleged.

28. By gratuitously calling in Mr. Campbell's former co-employees and disparaging Mr. Campbell's job performance, in the actual knowledge that such statements were false and damaging to Mr. Campbell's business reputation, Ms. Dimas and Mr. Singh exceeded the scope of any conditional privilege which may have attached to their communications with those co-employees. In consequence, the statements constituted defamation within the meaning of Maryland law.

29. These defamatory statements were made in the course of the Center's business, to the Center's employees, by the Center's employees. Under the doctrine of *respondeat superior*, these defamatory statements became the legal responsibility of the Center, which employed both Ms. Dimas and Mr. Singh.

30. These defamatory statements were made with actual malice, characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will and fraud.

31. The retaliatory animus against Mr. Campbell which led to the decision to terminate him clearly continues unabated, and motivated this defamation. It is to be expected that such animus will lead to similar damaging remarks being made to Mr. Campbell's potential future employers.

WHEREFORE, Mr. Campbell demands:

a. An order enjoining the Center, its officer and employees, from representing to any potential future employer that Mr. Campbell was discharged for cause;

b. Compensatory damages in the amount of $200,000;

c. Punitive damages in the amount of $200,000;

d. Prejudgment and postjudgment interest, as may be appropriate;

e. The costs of this action; and

f. Such other and further relief as justice may require.

/s/

Jack L. B. Gohn
Bar No. 02823
Gohn, Hankey & Stichel, LLP
Suite 2101
201 N. Charles St.
Baltimore, MD 21201
(410) 752-0412 (telephone)
(410) 752-2519 (telecopier)
jgohn@ghsllp.com
Counsel for Plaintiff Brian Campbell

0007368b.wpd